UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 3:19-cr-00010-MMD-WGC |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| SAUD A. ALESSA, *et al.*, | |
| Defendants. | |

Defendant Saud A. Alessa was indicted on four tax fraud counts based on the government's theory that he conspired with his work supervisor and domestic partner to conceal his income as a manager of door-to-door vacuum salesmen to prevent the Internal Revenue Service ("IRS") from levying against his income and assets to pay previously incurred tax debts. (ECF No. 1.) His domestic partner, Jackie Hayes, and his supervisor, Jeffrey Bowen, are also named Defendants as to the conspiracy count. (*Id.* at 6-13.) This order addresses four pending motions:[1] (1) Defendant Saud Alessa's motion for an order regarding the preservation and destruction of evidence (ECF No. 162);[2] (2) Mr. Alessa's motion to compel evidence regarding declination of criminal charges and FBI file (ECF No. 173);[3] (3) the government's motion to compel regarding whether Mr. Alessa

---

[1] It does not address any of the pending motions in limine, which the Court will address in a subsequent written or oral ruling before trial starts. It also does not address the recently filed motion regarding the jury selection process (ECF No. 283), which is not yet fully briefed.

[2] The government filed a response (ECF No. 188), and Mr. Alessa filed a reply (ECF No. 197). Mr. Bowen filed a motion to join this motion. (ECF No. 168.) No parties opposed Mr. Bowen's request to join. Because Mr. Bowen is similarly situated as to Mr. Alessa regarding this motion, and good cause otherwise appearing, the Court grants his request to join the motion.

[3] The government filed a response (ECF No. 187), and Mr. Alessa filed a reply (ECF No. 192). Mr. Bowen also moved to join this motion (ECF No. 179), which no party opposed. Mr. Bowen is also similarly situated as to this motion. For that reason, and good cause appearing, the Court grants Mr. Bowen's request to join the motion.

intends to assert an advice of counsel defense (ECF No. 205);[4] and (4) Mr. Alessa and Ms. Hayes' motion to dismiss the indictment because the government recently communicated with their former bankruptcy attorney (ECF No. 238).[5] As further explained below, the Court will deny all four motions.

## I. MOTION FOR ORDER REGARDING EVIDENCE PRESERVATION AND DESTRUCTION

The government alleges in the indictment that it notified Mr. Alessa of its intent to levy his assets and income to recover the taxes the IRS alleged he had not paid. (ECF No. 1 at 5.) In this motion, Mr. Alessa explains that he informally sought the notices of intent to levy and collection file related to the IRS's 2006 collection efforts against Mr. Alessa from the government, but the government responded that it did not have them. (ECF No. 162 at 3-4.) Further, because some discovery materials already provided by the government indicate that a 2006 notice of intent to levy was returned to sender, Mr. Alessa argues that the missing records would show that he never received notice of the IRS's intent to levy against his income and assets—and thus the missing documents would be exculpatory because they may show that Mr. Alessa never learned of the IRS's intent to levy his income or assets. (*Id.* at 4.) And considering the government's alleged representation to defense counsel that it does not have the documents Mr. Alessa is seeking, Mr. Alessa requests "evidence regarding IRS retention policies, the date the mailings were destroyed, and any attempts at preservation." (*Id.* at 5.)

The government first responds that Mr. Alessa's motion should be denied because it is untimely. (ECF No. 188 at 2 n.2.) The Court agrees. The pretrial motions deadline in this case was March 27, 2020. (ECF No. 58.) Mr. Alessa never filed a motion to modify or extend the pretrial motions deadline, and indeed does not even refer to the timeliness of his motion in it. (ECF No. 162.) He also did not respond to government's argument that

---

[4] Mr. Alessa filed a response (ECF No. 233), and the government filed a reply (ECF No. 262).

[5] The government filed a response (ECF No. 261), Defendants Mr. Alessa and Ms. Hayes filed a reply (ECF No. 281).

2

his motion was untimely in his reply. (ECF No. 197.) And the Court agrees with the government (ECF No. 188 at 2 n.2) that this motion contains a "request which is capable of determination without the trial of the general issue" and is therefore subject to the pretrial motions deadline set by the Court. *See* Fed. R. Crim. P. 12(b), (c)(1), (3) (stating the Court may set a pretrial motions deadline like the Court did here, and if a party misses that deadline, the motion is untimely unless they can show good cause). More specifically, the motion is probably best characterized as a motion seeking discovery under Rule 16. *See* Fed. R. Crim. P. 13(b)(3)(E). The motion is therefore untimely and denied on that basis.[6] (ECF No. 162 (reflecting a filing date of July 13, 2021, or more than a year after the pretrial motions deadline).) *See also* Fed. R. Crim. P. 12(c)(3) (giving the Court discretion to deny an untimely-filed pretrial motion filed under Rule 12(b)(3)); *United States v. Bundy*, Case No. 2:16-cr-00046-GMN-PAL, 2017 WL 119747, at *1 (D. Nev. Jan. 11, 2017) (denying a motion as untimely that was filed after the pretrial motions deadline set by the Court expired); *United States v. Matta-Ballesteros*, 71 F.3d 754, 766 (9th Cir. 1995), *opinion amended on denial of reh'g*, 98 F.3d 1100 (9th Cir. 1996) (finding that the "district court did not abuse its discretion in denying the untimely motion[,]" even where the defendant made an argument as to why the district court should have entertained the untimely motion).

Even setting aside its timeliness, the Court alternatively denies the motion on its own merits. On the merits, the government responds that it has no obligation to understand or gather information about the IRS's retention policies, but nonetheless did, and provided copies of the material it was able to gather as exhibits to its response, along with some explanation and concessions in that response. (ECF No. 188 at 2-7.) The government specifically concedes that some notices mailed to Mr. Alessa were returned as undeliverable, that it is missing some notices that may have been mailed to Mr. Alessa but argues that these issues Mr. Alessa pointed out in his motion constitute deficiencies

---

[6]The Court also emphasizes the importance of complying with pretrial motions deadlines and other orders issued by the Court.

in its proof that may make the government's job at trial more difficult. (*Id.* at 7-9.) However, the government describes other evidence it intends to rely on at trial "to establish that Defendant Alessa was aware of his outstanding tax liabilities when he conspired with Defendants Hayes and Bowen to defraud the United States, and when he committed various affirmative acts of evasion." (*Id.* at 8.) The government further argues that Mr. Alessa already has the information he needs to make the arguments he makes in his motion at trial to the effect that he was unaware the IRS was attempting to levy against him for unpaid taxes, so any additional material the government could have provided through discovery if it existed would not have been exculpatory but instead cumulative of information Mr. Alessa already has. (*Id.* at 8-9.)

The Court agrees with the government. Based on the Court's review of the evidence presented by the parties with the motion and associated briefing, Mr. Alessa already has sufficient information to argue he was not on notice the IRS was trying to levy his income and assets to collect back taxes in a manner consistent with his argument in his motion. Indeed, the government concedes that some notices mailed to Mr. Alessa were returned as undeliverable and other records were destroyed. The government also provided Mr. Alessa with much of the information he was seeking in his motion in its response. (*Compare* ECF No. 162 at 5 *with* ECF No. 188 and the exhibits thereto.) This is evidenced by the fact that Mr. Alessa requests an entirely new remedy in his reply. (ECF No. 197 at 8-9 (seeking an order "precluding the government from making any reference to any attempt to notify Mr. Alessa of an intent to levy, precluding any witness from testifying as to any attempt to levy from Mr. Alessa.").)

It would be unfair to grant Mr. Alessa those remedies because the government never had an opportunity to respond to Mr. Alessa's request for them, especially considering that the government gave Mr. Alessa most of what he was seeking in his initial motion in its response. Moreover, the Court finds the arguments Mr. Alessa raised for the first time in reply in support of these requested remedies unpersuasive. First, much of Mr. Alessa's new argument is based on the notation in a 'TXMODA' transcript that the

4

IRS apparently deemed Mr. Alessa's tax debt uncollectable in 2008. (*Id.* at 6-8 (relying on ECF No. 199-2.).) However, the account transcript Mr. Alessa filed with his initial motion contains a consistent notation, but is followed by a 2010 notation, "[a]ccount currently considered collectable[.]". (ECF No. 164-1 at 3.) This evidence does not support Mr. Alessa's conclusion that "those tax years were written off as uncollectible" in 2008 which, in turn, forms the basis of the rest of his argument as to the exculpatory value of the missing evidence. (ECF No. 197 at 8; *see id.* at 8-9.) Second, even if Mr. Alessa never received a letter from the IRS notifying him of the IRS's intent to levy his income and assets, that does not mean one was never sent. That makes much of Mr. Alessa's argument that the government's allegation in the indictment that he was 'notified' is false or misleading unpersuasive. The Court understands 'notified' to mean sent, not necessarily received, as Mr. Alessa appears to argue at times.

Third, Mr. Alessa's relief requested for the first time in his reply is overbroad and insufficiently tethered to the government's concession that it has no proof certain mailings were sent to Mr. Alessa. For example, the Court knows from the proceedings on the motion for an order to show cause that the government also alleges Revenue Officer Gurney went to a house and served Ms. Hayes with a summons for Mr. Alessa, so Mr. Alessa could have learned that the IRS was attempting to levy against his assets and income based on those interactions. More broadly, the government concedes it will need to rely on other documents and testimony to establish that Mr. Alessa was aware of his outstanding tax liability. (ECF No. 188 at 8-9.) Mr. Alessa does not persuasively explain in his reply why the government should be precluded from offering this alternative evidence at trial because the IRS no longer has proof that it mailed out certain notices of intent to levy or argue that this other evidence would not show Mr. Alessa was on notice the IRS was attempting to collect a tax debt from Mr. Alessa. Thus, precluding the government and any witnesses from making any reference to any attempt to notify Mr. Alessa of an intent to levy—as Mr. Alessa requests—is unwarranted.

In sum, the motion is denied.

5

## II. MR. ALESSA'S MOTION TO COMPEL

Mr. Alessa's motion to compel is also untimely filed and is denied on that basis. (*Compare* ECF No. 58 (setting pretrial motions deadline of March 27, 2020) *with* ECF Nos. 173 (declining to mention timeliness in a motion filed July 26, 2021), 192 (also declining to mention timeliness even though the government raised it in response).) However, the Court alternatively denies Mr. Alessa's motion to compel on its own merits.

Mr. Alessa seeks "the FBI files referenced in the emails and the declination of the United States Attorney with regard to the criminal referral" the US Bankruptcy Trustee made in 2013 recommending certain charges against Mr. Alessa, which are listed as overt acts in this case, but not explicitly pursued as charges. (ECF No. 173 at 3.) Mr. Alessa argues any reason the prosecutors declined to prosecute the charges recommended by the Bankruptcy Trustee are *Brady* evidence that must be turned over, and further argues he wants more information about the decision not to prosecute him on those recommended charges to call into question the investigation that led to the indictment here. (*Id.* at 3-4.) The government primarily responds that it has no obligation to produce the information Mr. Alessa seeks in his motion to compel under Fed. R. Crim. P. 16(a)(2). (ECF No. 187 at 4-5.) Mr. Alessa reiterates in reply that information about why the U.S. Attorney's office did not indict Mr. Alessa on the charges referred by the Bankruptcy Trustee is *Brady* material that overrides Rule 16(a)(2) but does not point to an exception to Rule 16(a)(2) contained elsewhere in Rule 16. (ECF No. 192 at 3-5.) The Court agrees with the government.

Subject to exceptions that do not appear to apply here, Rule 16(a)(2) states that "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" are not subject to disclosure in discovery. This describes the type of documents Mr. Alessa is seeking here. And Mr. Alessa does not argue that one of the exceptions to this rule applies, instead arguing that any material he does not already have is *Brady* material. However, Mr. Alessa's argument is unpersuasive because it relies on mere

speculation. The government has obligations under *Brady* and its progeny that it is supposed to be upholding. The Court has not yet found a *Brady* violation in this case, though there has been much discussion of *Brady* in the pretrial litigation up to this point. (ECF Nos. 135, 145, 146, 149, 166, 222, 250, 273, 274.) If the government has *Brady* materials, the Court expects the government to timely turn it over—as it does in every criminal case. If the government does not, and Mr. Alessa later learns of it, Mr. Alessa has various remedies. *See, e.g.*, *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020) (describing various remedies available for *Brady* violations). But the Court cannot assume without evidence that everything the government has not already turned over to Mr. Alessa contains *Brady* material, especially considering that the government has a preexisting obligation to turn *Brady* materials over at a time when they can be useful.

Moreover, Mr. Alessa proffers no legal support for his argument that he is entitled to documents showing why the local United States Attorney's office decided not to seek an indictment using the same charges recommended by the Bankruptcy Trustee— probably because none exists. Forcing the government to explain why it did not indict a particular case a particular way by producing documents about that decision improperly invades the sphere of prosecutorial discretion. *See, e.g.*, *United States v. Miller*, 722 F.2d 562, 565-66 (9th Cir. 1983) (explaining the history of, and rationale for, prosecutorial independence and stating that "the specific rule governing prosecutorial charging decisions gives courts only a limited supervisory power over such decisions"). Moreover, Mr. Alessa proffered no legal support, and the Court is not aware of any, supporting the view that the local United States Attorney's office is somehow required to indict a case precisely as it was recommended by the Bankruptcy Trustee. Such a rule would be unreasonable in any event because charging decisions lie within the discretion of prosecutors. *See id.* at 565 ("Charging decisions are generally within the prosecutor's exclusive domain.").

And the primary case Mr. Alessa relies on is distinguishable. Mr. Alessa relies on *Kyles v. Whitley*, 514 U.S. 419, 446 (1995) to argue that information allowing him to

question the reliability and integrity of the investigation in this case is *Brady* material. (ECF No. 173 at 3-4.) However, both the type of evidence discussed in the portion of *Kyles* upon which Mr. Alessa relies and the posture of that decision renders it distinguishable from these circumstances. The cited portion of *Kyles* related to the prosecution's failure to disclose a key witness, Beanie's, "statements to the police [that] were replete with inconsistencies and would have allowed the jury to infer that Beanie was anxious to see Kyles arrested for Dye's murder[,]" perhaps resulting in the Defendant not being convicted for murder. *See Kyles,* 514 U.S. at 446. The information Mr. Alessa seeks here relates to the government's decision not to indict this case a particular way at a particular time. Moreover, *Kyles* was decided in the context of a habeas corpus petition after Kyles had been convicted of murder at trial based in part on testimony by Beanie—in other words, where prejudice was much clearer than it is now, as this case remains in a pretrial posture. *See id.* at 430-432. *Kyles* therefore does not persuasively support Mr. Alessa's argument.

In sum, Mr. Alessa's motion to compel is denied.

### III.   THE GOVERNMENT'S MOTION TO COMPEL

The government moves to compel Mr. Alessa to provide the government with notice of whether he intends to assert a reliance or advice-of-counsel defense at trial at least two weeks before trial starts. (ECF No. 205.) The government specifically argues that reliance defenses can involve complicated issues and expand the scope of the defense's discovery obligations, so the government will need more time to prepare to overcome this defense or defenses before trial. (*Id.* at 2.) Mr. Alessa responds that no applicable Ninth Circuit caselaw requires him to turn over his trial strategy, the government filed the motion too close to trial, and the government's representation that it needs more time to prepare for trial contradicts other positions the government has taken in this case, specifically opposing motions for continuances and for a complex case designation. (ECF No. 233.) The Court agrees with Mr. Alessa.

The government implicitly concedes it has no legal support for its motion to compel in appealing to the Court to exercise its inherent authority in a similar way to a court in the

Eastern District of Virginia. (ECF No. 262 at 2.) As Mr. Alessa points out, the government proffers no binding authority to support its motion, or even any within-circuit, non-binding authority. (*Compare* ECF No. 233 at 1 *with* ECF Nos. 205, 262.) Thus, the government's motion is best construed as a request entirely within the Court's discretion. So construed, the government's request is denied.

To the extent the Court considers the persuasive value of the authorities presented by the government and Mr. Alessa, the Court finds the rationale expressed in *United States v. Wilkerson*, 388 F. Supp. 3d 969 (E.D. Tenn. 2019), proffered by Mr. Alessa, more persuasive than *United States v. Dallmann*, 433 F. Supp. 3d 804 (E.D. Va. 2020), proffered by the government. (ECF Nos. 205 at 6, 233 at 2-5.) As Judge Mattice explained in *Wilkerson*, the decision to pursue criminal charges carries with it important consequences, including that the defendant has the right to remain silent while the government is required to prove its case beyond a reasonable doubt. *See* 388 F. Supp. 3d at 972. Moreover, forcing the defense to disclose anything to the government without the imposition of reciprocal discovery rights is foreign to the rules of criminal procedure and our Constitutional system, not to mention that reliance or advice of counsel defenses are not specifically enumerated under Fed. Rs. Crim. P. 12.1, 12.2, or 12.3 as defenses that must be disclosed in advance. *See id.* at 972-75. "[O]ther than a seemingly arbitrary, unspecified sentiment about when a proper defense must be formulated, the Court does not know why a criminal defendant must decide what defense (if any) to pursue in advance of trial or risk losing the option altogether." *Id.* at 975.

In sum, the government's motion to compel is denied.

**IV.    MR. ALESSA AND MS. HAYES' MOTION TO DISMISS**

Mr. Alessa and Ms. Hayes move to dismiss the indictment against them because the government twice intentionally communicated with their former bankruptcy attorney, Mr. Harrison. (ECF No. 238 at 1-2.) They argue the government intentionally violated their attorney-client privilege in doing so. (*Id.* at 2.) They further argue that this misconduct has substantially prejudiced trial defense and strategy, trampling on protected privileges and

constitutional rights, and thus the indictment against them must be dismissed. (*Id.*) The government counters that it did not violate their attorney client privilege in its communications with Mr. Harrison, and even if it unintentionally obtained privileged information, dismissal is not the appropriate remedy—suppression of any privileged item obtained by the government would be. (ECF No. 261 at 2-3.) While the Court agrees with Mr. Alessa and Ms. Hayes that the government's counsel should not have contacted Mr. Harrison in the way that they did because it led to this otherwise unnecessary dispute, the Court also agrees with the government that dismissal is too drastic a remedy because there is no evidence that government counsel attempted to obtain Defendants' attorney-client privileged information.

This motion raises some difficult questions. The first set of questions relates to the evidence that Mr. Alessa and Ms. Hayes submitted with their motion. On August 27, 2021, the government disclosed two Memoranda of Contact ("MOC" or "MOCs") to the defense team. (ECF No. 238 at 6; *see also* ECF Nos. 240-2, 240-3 (MOCs).) The first MOC, prepared by IRS Special Agent Jensen, recounts Agent Jenson's interactions with Mr. Harrison in Mr. Harrison's front yard when Agent Jensen served Mr. Harrison with a trial subpoena. (ECF No. 240-2.) Agent Jensen also invited Mr. Harrison to participate in a call with government counsel "to answer any questions about the subpoena and discuss his possible role as a witness in the trial." (*Id.* at 2.) After Mr. Harrison apparently replied that he only had a limited attorney/client waiver from Alessa to speak with the defense and could not waive attorney/client privilege in speaking with government counsel, Agent Jensen "advised Harrison that this issue is something he could discuss with DOJ attorneys during the proposed telephone call." (*Id.*) Mr. Harrison apparently went on to speculate as to why Mr. Alessa agreed to a resolution of his bankruptcy proceeding, stated that an accountant and tax preparer in his building were also involved in this case, and then agreed to participate in the call with government counsel. (*Id.* at 2-3.)

The second MOC is Agent Jensen's notes from the conference call between government counsel and Mr. Harrison. (ECF No. 240-3.) According to Agent Jensen, at

1  the outset of the call, "DOJ Trial Attorney Landman also advised that they did not intend
2  on discussing any possible attorney/client matters during the call." (*Id.* at 2.) Mr. Harrison
3  and government counsel apparently went on to discuss the topics Mr. Harrison would be
4  asked to testify about at trial, discussed how long his expected testimony would take, and
5  agreed to a follow-up meeting closer to trial. (*Id.* at 2-3.)

6        These MOCs raise difficult questions because they support the government's
7  argument in response to the motion—that government counsel did not seek to elicit any
8  attorney-client privileged information. (ECF No. 261 at 6-11.) However, the MOCs reflect
9  only one side of the story. Mr. Alessa and Ms. Hayes reasonably ask in their motion and
10 reply what else happened during these interactions that Agent Jensen may not have
11 noted. And the Court cannot say. But on the other hand, the Court cannot and will not find
12 that Agent Jensen or government counsel's representations as to the content of the
13 communications with Mr. Harrison are inaccurate absent some affirmative evidence—
14 reputations are too delicate for the Court to sully them based on nothing more than
15 speculation about what Agent Jensen did not include, or what government counsel is not
16 telling the Court. The Court is therefore very reluctant to impose any sort of sanction on
17 the government based on the contacts reflected in the MOCs, much less dismiss the
18 indictment because of them.

19       The next question is why the government decided to do this. If the government had
20 simply had Agent Jensen serve the subpoena and not ask any questions, this motion
21 practice would never have occurred. And surely experienced counsel could have
22 foreseen that retroactively disclosing unilateral contacts with two of the Defendants'
23 former counsel would create questions about whether they violated the attorney-client
24 privilege made difficult to defend against because the defense team was not present for
25 the interactions.

26       And that leads to the other difficult question—was the government acting in bad
27 faith when it communicated with Mr. Harrison? As Mr. Alessa and Ms. Hayes point out,
28 the timing of the government's disclosure of the MOCs shortly after the government's

11

request that the defense disclose whether it intended to assert a reliance or advice of counsel defense that also mentioned the government understood the assertion of such a defense would waive the attorney client privilege creates a plausible inference that the government's counsel knew they had done something wrong and were seeking to mitigate the consequences of their mistake. (ECF No. 238 at 7-9.) If Mr. Alessa and Ms. Hayes waived their privilege with Mr. Harrison, there would be no issue with the government's contacts with Mr. Harrison, and thus no basis for the motion. But to be fair the government, the government argues there was nothing nefarious about the timing of its request that the defense disclose whether it intends to rely on a reliance defense and reiterates that it will not seek any privileged information from "Mr. Harrison unless and until the Court concludes that the privilege has been waived by Defendant Alessa's assertion of a reliance defense." (ECF No. 261 at 14 n.6.) And as stated above, the Court will not find that government counsel or Agent Jensen acted in bad faith unless it has some affirmative evidence it currently lacks—something more than a plausible inference or conjecture. Additionally, Agent Jensen's notes in the MOCs are consistent with the government's argument that it did not seek to obtain any information covered by the attorney-client privilege in its conversations with Mr. Harrison. (ECF Nos. 240-2, 240-3.)

This all leaves the Court with the conviction that the government should not have contacted Mr. Harrison in the way that it did, but without the affirmative evidence of bad faith it would require to impose the ultimate sanction—dismissal with prejudice. The Court's primary concern here is that this motion practice was avoidable if the government had interacted with Mr. Harrison differently. As to their requested dismissal sanction, even Mr. Alessa and Ms. Hayes note *United States v. Rogers*, 751 F.2d 1074 (1985), which holds the appropriate remedy is suppressing the impermissibly obtained evidence or a new trial. (ECF No. 238 at 9; *see also* ECF No. 261 at 13-14 (making the argument based on *Rogers* that suppression is the appropriate remedy).) And here, unlike *Rogers*, the only pertinent evidence before the Court—the MOCs—suggests that the government attempted to limit its inquiry to topics and materials not covered by the attorney-client

privilege. (ECF Nos. 240-2, 240-3.) Dismissing an indictment is a drastic step, making it a disfavored remedy only appropriate where the defendant is prejudiced, *see Rogers*, 751 F.2d at 1076-77, and "less drastic alternatives are not available." *United States v. Kearns*, 5 F.3d 1251, 1254 (9th Cir. 1993). Less drastic alternatives are available, even as recognized by Mr. Alessa and Ms. Hayes, who request in reply either an evidentiary hearing, or precluding "the government from calling Attorney Harrison as a witness and preclud[ing] the government from cross-examining Attorney Harrison should the defense call him as a witness." (ECF No. 281 at 14-16.) However, the Court finds even these requested sanctions unwarranted based on the records before the Court—and as discussed above.

The Court will accordingly deny the motion because it seeks dismissal and other sanctions. However, to avoid further dispute involving an issue that could have been easily avoided, the Court will preclude government counsel from contacting and communicating with Mr. Harrison outside of court during trial between now and the conclusion of the trial. Government counsel may have Agent Jensen discuss logistical details of Mr. Harrison's appearance at trial with Mr. Harrison. The Court does not wish to preside over another dispute involving the government's potential invasion of the attorney-client privilege.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered Mr. Alessa's motion for an order regarding the preservation and destruction of evidence (ECF No. 162) is denied.

It is further ordered that Mr. Bowen's motion to join the motion regarding the preservation and destruction of evidence (ECF No. 168) is granted.

It is further ordered that Mr. Alessa's motion to compel (ECF No. 173) is denied.

It is further ordered that Mr. Bowen's motion to join Mr. Alessa's motion to compel (ECF No. 179) is granted.

It is further ordered that the government's motion to compel (ECF No. 205) is denied.

It is further ordered that Mr. Alessa and Ms. Hayes' motion to dismiss the indictment against them (ECF No. 238) is denied.

It is further ordered that the government's counsel may not directly communicate with Mr. Harrison in advance and outside of trial. They must use the case agent assigned to this case even to communicate logistical details about Mr. Harrison's appearance.

DATED THIS 17th Day of September 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE